UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| HOWARD CHADWICK ROCHESTER, | CASE NO. 3:22-CV-02230-JRK |
| Plaintiff, | JUDGE JAMES R. KNEPP, II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

## INTRODUCTION

Plaintiff Howard Chadwick Rochester challenges the Commissioner of Social Security's denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On December 9, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Dec. 9, 2022). Following review, and for the reasons stated below, I recommend the District Court AFFIRM the Commissioner's decision.

## PROCEDURAL BACKGROUND

Mr. Rochester filed for DIB and SSI on June 29, 2020, alleging a disability onset date of January 1, 2017. (Tr. 88, 97). The claims were denied initially and on reconsideration. (Tr. 106-07, 126-27). Mr. Rochester then requested a hearing before an Administrative Law Judge. (Tr. 162-63). Mr. Rochester (represented by counsel) and a vocational expert (VE) testified before the ALJ on

1

October 26, 2021. (Tr. 37-66). At the hearing, Mr. Rochester amended his alleged disability onset date to April 25, 2019. (Tr. 42).

On November 5, 2021, the ALJ issued a written decision finding Mr. Rochester not disabled. (Tr. 13-36). The Appeals Council denied Mr. Rochester's request for review on October 11, 2022, making the hearing decision the final decision of the Commissioner. (Tr. 1-7; *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481). Mr. Rochester timely filed this action on December 9, 2022. (ECF #1).

FACTUAL BACKGROUND

In 2020, Mr. Rochester applied for disability benefits based on his reported conditions of epilepsy, hypertension, depression, anxiety, asthma, and high blood pressure. (Tr. 265). In April 2021, at the reconsideration level, a state agency medical consultant reviewed Mr. Rochester's medical records pertaining to these conditions, assessed his residual functional capacity, and found him not disabled. (Tr. 108-25).

On June 25, 2021, Mr. Rochester sought treatment for left knee and ankle pain and worsening back pain. (Tr. 925). He reported having pain since May 2021 when he fell during a seizure. (*Id.*). Physical examination revealed paraspinal tenderness in the lower thoracic and upper lumber spine, bruising on the left knee with tenderness to palpation and internal rotation, and tenderness of the left ankle. (*Id.*). X-rays of the left knee and ankle showed no acute findings. (Tr. 916).

On July 7, 2021, Mr. Rochester sought additional treatment for his left knee at Northwest Ohio Orthopedics and Sports Medicine. (*Id.*). There, he complained of knee pain since his fall in May 2021, described as sharp and aggravated by ambulation and bearing weight. (*Id.*). He reported

2

joint pain, swelling, stiffness, and arthritis, but denied back pain, muscle cramps, and muscle weakness. (Tr. 918). Mr. Rochester walked with an antalgic gait and physical examination of the left knee revealed mild swelling, intact range of motion with discomfort noted at the near end of flexion and extension, generalized tenderness to palpation worse at the medial joint line, and a positive McMurray's test with varus stress. (Tr. 918-19). Suspecting an issue with the medial meniscus, the treating provider ordered an MRI of the left knee. (Tr. 919). In August 2021, an MRI revealed signal abnormality in the posterior horn of the medial meniscus consistent with a tear, small-to-moderate amount of joint effusion, and bone edema or contusion in the medial femoral condyle. (Tr. 1235). This is the last medical record from the administrative transcript addressing Mr. Rochester's knee.

## THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2. The claimant has not engaged in substantial gainful activity since April 25, 2019, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: epilepsy; tremor of unknown ideology [*sic*]; substance use disorder, alcohol, and early remission; psychological conditions variously described as: depression, anxiety, bipolar disorder, adjustment disorder with mixed anxiety and depressed mood; hepatic steatosis of the liver; asthma; and chronic obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: He is limited to frequent handling and fingering with the bilateral upper extremities. He can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and can frequently balance, occasionally stoop defined as bending at the waist, kneel, and crouch defined as bending at the knees, but frequently crawl. He can never work around hazards such as unprotected heights or moving dangerous mechanical parts, he can never operate a motor vehicle. He is to do no work around flashing lights. He can occasionally work in conditions of humidity and wetness, in conditions of concentrated dust, odors, fumes, and other pulmonary irritants, or in conditions of extreme heat or cold. He is also limited to performing simple routine and repetitive tasks, but not a production rate pace, for example, no assembly line work. He is limited to simple work-related decisions. He is limited to responding appropriately to occasional interaction with supervisors and coworkers, but is to have no interaction with the general public. He is limited to tolerating few changes in the work setting defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently and be adequately and easily explained. He is limited to no writing.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on November 9, 1972, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

4

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 25, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-30).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's

position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision is supported by substantial evidence, the Court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); accord *Shrader v. Astrue*, No. 11 13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows the five-step evaluation process found at 20 C.F.R. §§ 404.1520 and 416.920 to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters,* 127 F.3d at 529.

## DISCUSSION

Mr. Rochester presents a single argument: the ALJ's RFC determination is unsupported by substantial evidence because she failed to fully develop the record. (Pl.'s Br., ECF #12, PageID

1289). He claims the ALJ relied on stale opinions from the state agency medical consultants who did not review records regarding his knee impairment, violating the principle outlined in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp 2d 908, 912 (N.D. Ohio 2008), and its progeny by formulating an RFC without seeking updated opinion evidence. (*Id.* at PageID 1289-90). According to Mr. Rochester, the ALJ should have obtained a medical opinion regarding the knee impairment and the failure to do so means she interpreted raw medical data. (*Id.* at PageID 1292).

The Commissioner responds that the ALJ found the knee impairment not severe at Step Two because Mr. Rochester's torn meniscus has not lasted or is not expected to result in more than minimal work-related restrictions for a continuous period of at least 12 months, a finding Mr. Rochester does not challenge. (Comm'r's Br., ECF #15, PageID 1308). Additionally, the Commissioner asserts the ALJ, who has sole responsibility for assessing a claimant's RFC, is not required to base the RFC determination on a medical opinion. (*Id.* at PageID 1309).

For the reasons set forth below, I find the ALJ's conclusions supported by substantial evidence. Therefore, I recommend the District Court affirm the Commissioner's decision denying DIB and SSI.

At Step Two, the ALJ identified as severe the following medically determinable impairments: epilepsy; tremor; substance use disorder, alcohol, and early remission; psychological conditions variously described as: depression, anxiety, bipolar disorder, adjustment disorder with mixed anxiety and depressed mood; hepatic steatosis of the liver; asthma; and chronic obstructive pulmonary disease (COPD). (Tr. 19). The ALJ also identified non-severe conditions, including hypertension, vitamin D deficiency, hyperlipidemia, and left knee meniscus tear. (Tr. 20). She found these conditions not severe because "they have been responsive to treatment, cause no more

than minimal vocationally relevant limitations, and/or have not lasted or are not expected to result in more than minimal work-related restrictions for a continuous period of at least 12 months." (*Id.*). At Step Three, the ALJ determined Mr. Rochester does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

After considering the hearing testimony, medical evidence, and medical opinions, the ALJ determined Mr. Rochester retained the residual functional capacity to perform medium work subject to the following limitations:

- Frequent handling and fingering with the bilateral upper extremities;
- Occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds;
- Frequently balance and crawl;
- Occasionally stoop (bending at the waist), kneel, and crouch (bending at the knees);
- Never work around hazards such as unprotected heights or moving mechanical parts;
- Never operate a motor vehicle;
- Avoid flashing lights;
- Occasionally work in conditions of humidity and wetness, in conditions of concentrated dust, odors, fumes, and other pulmonary irritants, or in extreme temperatures;
- Performing simple, routine, and repetitive tasks, but not at a production rate pace, such as assembly line work;
- Making simple work-related decisions;
- Occasional interaction with supervisors and coworkers, but none with the general public;
- Work in a setting with routine job duties that remain static and are performed in a stable, predictable work setting, with necessary changes occurring infrequently and that are adequately and easily explained; and
- No writing.

(Tr. 22).

At Step Four, the ALJ compared the RFC to Mr. Rochester's work experience and determined he could not perform past relevant work. (Tr. 28). At Step Five, the ALJ found that

jobs exist in significant numbers in the national economy that Mr. Rochester can perform and, as such, he was not disabled. (Tr. 29-30).

Mr. Rochester's claim begins and ends with the ALJ's determination that his torn meniscus, an acute injury, was not severe. The Social Security Administration (SSA) defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security Ruling (SSR) 82-52 states and explains the policy regarding the durational requirement under the disability provisions of the SSA and the implementing regulations. 1982 WL 31376. Relevantly, it states:

> When the application is being adjudicated (or a hearing decision is being issued) before the impairment has lasted 12 months, the nature of the impairment, the therapeutic history, and the prescribed treatment will serve as the basis for determining whether the impairment is expected to result in death or will continue to prevent the individual from engaging in any [substantial gainful activity] (or any gainful activity) for the additional number of months needed to make up the required 12 months duration.

*Id.* at *2.

Worse for Mr. Rochester's claim, the general rule that the ALJ, when assessing the RFC, must consider limitations and restrictions imposed by all impairments whether severe or not severe, 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2), does not apply to impairments determined not severe based on the durational requirement. *See Ortiz-Rosando v. Comm'r of Soc. Sec.*, 12 F. App'x 349, 352 (6th Cir. 2001) ("The ALJ was not required to include [limitations in pushing, pulling, and carrying] in his hypothetical question" and by extension the RFC "because the record indicates that it did not meet the twelve-month duration requirement."); *Wright v. Comm'r of Soc.*

*Sec.*, No. 1:19-cv-779, 2021 WL 1085002, at *6 (W.D. Mich. Mar. 22, 2021); *Killian v. Comm'r of*

*Soc. Sec.*, No. 2:20-cv-13345, 2022 WL 1498189, at *8 (E.D. Mich. Apr. 21, 2022), *report and*

*recommendation adopted*, 2022 WL 1494707 (E.D. Mich. May 11, 2022).

Here, Mr. Rochester suffered an acute knee injury when he reportedly fell during a seizure

in May 2021. (Tr. 925). An August 2021 MRI revealed signal abnormality in the posterior horn of

the medial meniscus consistent with a tear, small-to-moderate amount of joint effusion, and bone

edema or contusion in the medial femoral condyle. (Tr. 1235). At the administrative hearing in

October 2021, Mr. Rochester informed the ALJ he was going to have surgery to fix the tear and

would be on crutches for three to six weeks and attend physical rehabilitation after that. (Tr. 45).

This is substantial evidence supporting the ALJ's conclusion that Mr. Rochester's knee impairment

did not meet the durational requirement.

Because substantial evidence supports the ALJ's conclusion at Step Two that Mr.

Rochester's torn meniscus was not severe because it did not meet the durational requirement, the

ALJ was not required to include in the RFC any limitations stemming from the not severe knee

impairment. This finding makes it is unnecessary to address Mr. Rochester's argument that the

ALJ was required to seek a medical opinion on the subject in accordance with *Deskin* and its

progeny. Even if the ALJ had sought a medical opinion about the functional limitations posed by

the knee impairment, she would not have been required to adopt any of the opined limitations

because the impairment did not meet the 12-month durational requirement to be deemed severe.

Moreover, Mr. Rochester's testimony about the anticipated course of treatment indicated the

impairment would resolve before May 2022, twelve months after the onset of the knee

impairment. Mr. Rochester has not identified a legal error or a conclusion unsupported by substantial evidence. Therefore, he is not entitled to remand.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: December 8, 2023

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).**